E-FILED
Wednesday, 25 March, 2015  10:39:02 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| SANDRA WYMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13-cv-3390 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

Plaintiff Sandra Wyman appeals from the denial of her application for Social Security Disability Insurance Benefits (Disability Benefits) under Title II of the Social Security Act.  42 U.S.C. §§ 416(i) and 423.  This appeal is brought pursuant to 42 U.S.C. § 405(g) .  This matter is before this Court for a Report and Recommendation on Wyman's Motion for Summary Reversal (d/e 15) (Wyman's Motion), and Defendant Commissioner of Social Security's Motion for Summary Affirmance (d/e 19) (Commissioner's Motion).  For the reasons set forth below, this Court recommends that the Commissioner's Motion should be ALLOWED, Wyman's Motion should be DENIED, and the decision of the Commissioner should be AFFIRMED.

## STATEMENT OF FACTS

Wyman was born on December 1, 1951. She completed high school and worked as a mailer, cashier/clerk, and baker. Answer (d/e 10), attached Certified Transcript of Proceedings Before the Social Security Administration (R.) 28-29, 49-50. She alleged that she became disabled on April 1, 2009. R. 10. She suffers from scoliosis and degenerative disc disease. R. 12.

On April 27, 2009, Wyman went to the offices of Dr. Tariq Quadri, M.D., complaining of left knee and left hip pain. She saw Physician's Assistant Mari Janko. Wyman reported that the pain started after she sat in a chair with her left leg in a "figure four position." R. 205. She reported pain when going from a sitting to a standing position and when lying on her left side. Wyman also reported pain while walking. On examination, Janko found full range of motion in her left hip, tenderness to the medial aspect of the left knee, and good strength in the L5 and S1. Janko also observed that Wyman could stand on each foot without pain and could toe and heel walk without weakness. Janko prescribed medication and ordered an X-ray of the left hip and an MRI of the left knee. R. 205-06. The MRI showed no evidence of internal derangement or bony abnormality. R. 219. The X-ray of the left hip was negative. R. 220.

On May 4, 2009, Wyman saw Janko again. Wyman reported that the medication "really helped to decrease her pain," but the pain returned after she stopped taking the medication. R. 201. Wyman reported locking and catching in her left knee. She also reported that the pain increased with sitting or lying on her left side. Wyman reported no numbness or weakness in her leg. On examination, Wyman had full range of motion in her back and negative straight leg testing bilaterally. Wyman also had full range of motion in her left hip and left knee without pain. Wyman had tenderness to the lateral aspect of her left knee. Wyman could stand and walk without pain. R. 202. Janko restarted the medication and ordered an MRI of her left hip and an X-ray of her lumbar spine. R. 202. The MRI revealed no abnormality. The X-ray showed scoliosis with degenerative changes in the lower lumbar facet joints. R. 221. Janko referred Wyman to an orthopedic specialist Dr. Randall Rogalsky, M.D., for further evaluation. R. 202.

On May 9, 2009, Wyman saw Dr. Rogalsky. Wyman reported that her left leg was giving away. She reported pain in her hips, back stiffness, and some knee symptoms. On examination, Dr. Rogalsky diagnosed left sciatica secondary to low back structural abnormality. Dr. Rogalsky advised Wyman to avoid aggravating activities. He also ordered a lumbosacral MRI. R. 225. The MRI showed some disc herniation at L3-4,

disc bulging osteoarthritic changes at L4-5 resulting in severe lateral recess narrowing, and central disc herniation at L4-5 moderately narrowing the central canal. R. 233.

On June 8, 2009, Wyman saw pain specialist Dr. Thomas Brummett, M.D. On examination, Dr. Brummett found some weakness in Wyman's left quadriceps compared to the right. Dr. Brummett found no spasms in her back, not much tenderness in her lumbar area, and some tenderness in the sacral sulcus area. R. 236. Dr. Brummett diagnosed Left L4 radiculitis secondary to disk bulging and lateral recess narrowing. He administered an epidural steroid injection at L4-5. R. 236. Dr. Brummett administered additional injections on June 15, 2009, June 29, 2009, and July 13, 2009. R. 240-45. On August 10, 2009, Wyman saw Dr. Brummett for a follow-up. Wyman reported that her back was doing well. She was not using any oral pain medication. R. 239.

On March 23, 2011, Wyman protectively filed her application for disability benefits. Wyman alleged that she was disabled as of April 1, 2009. R. 10, 135.

On July 7, 2011, Wyman saw Dr. Raymond Leung, M.D., for a consultative examination. Wyman reported that she had scoliosis. She reported that she had injections that helped a little with the pain. She

reported occasional pain in her hips. Pain medication helped with the pain. She reported that she could walk one and one-half blocks and lift five pounds maximally. R. 255.

On examination, Dr. Leung observed that Wyman's gait was within normal limits. Wyman could walk fifty feet unassisted. Wyman could tandem walk, hop, heel walk, toe walk, and squat. Straight leg testing was negative bilaterally. Dr. Leung observed a curve in Wyman's back. Dr. Leung noted no muscle atrophy or spasms. Wyman had normal strength in her extremities. Dr. Leung's impression was scoliosis. R. 256-57.

On July 20, 2011, Dr. B. Rock Oh, M.D., prepared a Physical Residual Functional Capacity (RFC) Assessment. Dr. Oh opined that Wyman could lift twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours in an eight-hour workday; sit six hours in an eight-hour workday; but had no other functional limitations. R. 261-68. Dr. Oh opined that Wyman's allegations of limitations were "partially credible." Wyman had completed a form entitled "Function Report – Adult" in which she stated that she could only lift ten pounds at most. R. 164. Dr. Oh opined that, "ADLs shows she is able to prepare meals, complete house work, drive herself, and shop in stores. Current consultative exam

show strength 5/5 throughout. The objective findings support the limitations noted in this RFC." R. 266. The term "ADLs" appears to refer to activities of daily living. Wyman reported on the Function Report – Adult form that she engaged in the activities identified by Dr. Oh. R. 159-66.

On February 19, 2013, the Administrative Law Judge (ALJ) held an evidentiary hearing. Wyman appeared with her attorney. Vocational expert Dr. Leslie F. Lloyd also appeared.[1]

Wyman testified first at the hearing. Wyman testified that she completed high school. She last worked part time packaging pamphlets at a pet food company. She testified that she lifted up to thirty pounds in that job. Before that, she worked part time as a cashier and stocker at a Dollar General store (Dollar General). She testified that the boxes she lifted stocking shelves weighed twenty to thirty pounds. R. 29-30. She last worked full time as a baker at a grocery store. R. 31.

The ALJ asked Wyman why she could not work. Wyman responded, "I can't stand very long, that many hours on my feet anymore like I used to. I can't lift things over my head to lift the things heavy anymore." R. 33. Wyman testified that she was not seeing a doctor at the time and was not taking any prescription medications. She testified that she took ibuprofen

---

[1] Dr. Lloyd's vita states that he holds a doctorate in vocational rehabilitation from Southern Illinois University at Carbondale, but does not indicate whether the degree is a Ph.D. or some other type of doctorate. R. 83.

and used heating pads and ice packs on her back. Wyman testified that she did not have any medical insurance. R. 33-34.

Wyman testified that in a typical day she woke up about 6:30 or 7:00 a.m. She took four ibuprofen tablets, twice a day, in the morning and before bed. She did her own laundry and the sheets and towels. Her husband did his own laundry. He also vacuumed the floors. Wyman fed the cat and sometimes walked around the yard. She mopped the floors, but that took all day. R. 37. Wyman testified that she fell asleep between midnight and 1:00 a.m., "When the Ibuprofen kicks in, that's when I can relax and that's when I can fall asleep." R. 36. Wyman testified that her hobbies were cooking and sewing. R. 37. She indicated she made quilts on a sewing machine and tacked them by hand. R. 37-38.

The ALJ asked Wyman about where she went outside her home. Wyman responded,

- A. Well, about three miles away from the grocery store, I go up there sometimes, grab a couple things and come back. I can't walk in the store very long, can't stay on my feet that long. And or go up to about three – about three-and-a-half, four miles from where my daughter lives, I go up to see my grandkids.

R. 38. Wyman testified that she occasionally babysat her grandchildren, ages 5, 7, and 11 years. R. 38.

Wyman testified that the doctors could not do much to relieve her back pain. She testified, "They gave me shots in my back that help a little bit. But not too much." R. 39. She testified that the effect of the shots did not last long. R. 40. She testified that she had problems squatting down and getting back up. R. 41.

Wyman testified that she could walk one and one-half to two blocks before she would need to stop. She testified that she would need to stop because of pain in her feet and knees. She testified that the problems in her back would cause the pain in her knees and feet. R. 43. Wyman testified that she could not stand still to do dishes; she needed to shift from one foot to the other or sit on a bar stool. R. 44.

Wyman testified that she went to see the doctor in April 2009 because her hip "popped out." R. 45. She said her hip problem started because she stood too long at her job at the Dollar General and because she tripped and fell at that job. R. 46.

Vocational expert Dr. Lloyd then testified. Dr. Lloyd categorized Wyman's past work as a mailer with the pet food company, a cashier with Dollar General, and a baker with the grocery store. R. 49-50. The ALJ asked Dr. Lloyd the following hypothetical question:

> I'd like you to assume a hypothetical individual of Ms. Wyman's age, education and work experience and assume that that

person would be limited to lifting 20 pounds on occasion and ten pounds frequently. And could stand and/or walk about six hours in an eight-hour workday, could sit for at least six. And that the person should avoid jobs that would expose them to full-body vibration like operation of heavy equipment, off-road equipment or heavy over-the-road equipment, tractor trailers and things. Certainly, jackhammers should be avoided. With those restrictions, would the hypothetical individual be able to perform any of Ms. Wyman's past work?

R. 50. Dr. Lloyd opined that such a person could perform a mailer job and a cashier job as the job is typically performed, but not as Wyman performed it. R. 50.

Dr. Lloyd testified that the person would need to maintain working at the light level for the full eight hour workday. Dr. Lloyd further opined that the person could not work if she needed to take unscheduled breaks during the workday. R. 51.

At the conclusion of the hearing the ALJ decided to send Wyman for a medical examination and the completion of a medical source statement. R. 52.

On March 18, 2013, Wyman saw Dr. Alan Morris, M.D., for a consultative examination. Wyman reported to Dr. Morris that the shots in her back gave her relief from her pain for about a week. Wyman reported daily mid-lumbar back pain. Wyman reported that she can sit for one hour,

stand for forty-five minutes, walk for thirty minutes, and can lift ten to fifteen pounds. R. 274.

On examination, Wyman could walk fifty feet without a cane. Her gait was normal. Wyman had no back spasms. Wyman could toe walk and heel walk. She could squat to 130 degrees, but needed support to straighten up. Wyman had to look at her feet to tandem walk. She had to put her hands on her knees to straighten up from a bent position. Wyman had no soft tissue or joint swelling of the hands, knees, or feet. R. 275. Wyman had no atrophy. Her lower extremity strength was normal. Dr. Morris diagnosed low back pain with x-rays showing degenerative arthritis. R. 275.

Dr. Morris completed a form entitled, "Medical Source Statement of Ability to do Work-Related Activities (Physical)" (Medical Source Statement). Dr. Morris opined that Wyman could lift or carry up to twenty pounds occasionally; sit for one hour at a time and a total of two hours in an eight-hour workday; stand for 45 minutes at a time and a total of three hours in an eight-hour workday; walk for 30 minutes at a time and walk a total of three hours in an eight-hour workday; push or pull occasionally; use her hands frequently; operate foot controls frequently; occasionally climb

stairs and ramps, balance, stoop, kneel, crouch, and crawl; never climb ladders or scaffolds; and occasionally work at unprotected heights, operate machinery with moving mechanical parts, or operate a motor vehicle. R. 277-81.

## THE DECISION OF THE ALJ

On June 20, 2013, the ALJ issued his decision. The ALJ followed the five-step analysis set forth in Social Security Administration Regulations (Analysis). 20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If true, Step 3 requires a determination of whether the claimant is so severely impaired that she is disabled regardless of her age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). To meet this requirement at Step 3, the claimant's condition must meet or be equal to the criteria of one of the impairments specified in 20 C.F.R. Part 404 Subpart P, Appendix 1 (Listing). 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant is not so severely impaired, the ALJ proceeds to Step 4 of the Analysis.

Step 4 requires the claimant not to be able to return to her prior work considering her age, education, work experience, and Residual Functional

Capacity (RFC). 20 C.F.R. §§ 404.1520(e) and (f), 416.920(e) and (f). If the claimant cannot return to her prior work, then Step 5 requires a determination of whether the claimant is disabled considering her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. 20 C.F.R. §§ 404.1512, 404.1560(c); Weatherbee v. Astrue, 649 F.3d 565, 569 (7th Cir. 2011); Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005).

    The ALJ found that Wyman met her burden at Steps 1 and 2. She did not engage in substantial gainful activity after April 1, 2009, and she suffered from the severe impairments of scoliosis and degenerative disc disease. At Step 3, the ALJ found that Wyman's I impairments or combination of impairments did not meet or equal any Listing. R. 12.

    The ALJ determined as Step 4 that Wyman had the RFC to perform light work,

> [T]he undersigned finds that . . . the claimant had the residual functional capacity to perform light work . . . except that she

would be unable to lift and carry more than 20 pounds
occasionally and 10 pounds frequently, and sit, stand and walk
6 hours out of an 8-hour workday.[2] She should avoid all
exposure to whole body vibration from operation of heavy on
road and off road equipment and heavy types of jackhammers.

R. 13. The ALJ relied on the opinions of Dr. Oh; the records from Dr. Brummett in August 10, 2009, indicating that the epidural injections relieved her pain; Dr. Leung's consultative examination; the lack of medical treatment after 2009; and Wyman's daily activities to support his findings. R. 14-16.

The ALJ rejected Dr. Morris' opinions in the Medical Source Statement. The ALJ stated that the opinions were given after a one-time examination and were based primarily on Wyman's subjective complaints. R. 15. The ALJ further stated,

> Dr. Morris has not provided a medical basis for his opinion and this is not consistent with his examination notes or with any of the other evidence in the file. It is also not consistent with the claimant's testimony. The claimant never claimed to be essentially bed ridden/lying down 5 hours out of eight waking hours.

R. 15.

The ALJ then determined at Step 4 that Wyman could perform her prior work as a mailer and a cashier. The ALJ relied on the RFC

---

[2] Dr. Oh's RFC Assessment states that Wyman can stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday. R. 262.

determination and the opinion of vocational expert Dr. Lloyd.  R. 17.  The ALJ determined that Wyman was not disabled because she could return to her past relevant work.  R. 17.

Wyman appealed the decision of the ALJ.  On September 24, 2013, the Appeals Council denied Wyman's request for review.  The decision of the ALJ then became the final decision of the Commissioner.  R. 1.  Wyman then brought this action for judicial review.

## ANALYSIS

This Court reviews the Decision of the Commissioner to determine whether it is supported by substantial evidence.  In making this review, the Court considers the evidence that was before the ALJ.  <u>Wolfe v. Shalala</u>, 997 F.2d 321, 322 n.3 (7th Cir. 1993).  The ALJ has a duty to develop the administrative record.  <u>Nelms v. Astrue</u>, 553 F.3d 1093, 1098 (7th Cir. 2009).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  This Court must accept the findings if they are supported by substantial evidence, and may not substitute its judgment.  <u>Delgado v. Bowen</u>, 782 F.2d 79, 82 (7th Cir. 1986).  This Court will not review the credibility determinations of the ALJ unless the determinations lack any explanation or support in the record.  <u>Elder v.</u>

Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008). The ALJ must articulate at least minimally his analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ must "build an accurate and logical bridge from the evidence to his conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

In this case, the ALJ's decision is supported by substantial evidence. The determination of Wyman's RFC is supported by the medical records from Physician's Assistant Janko and Dr. Brummett, and from the consultative examination of Dr. Leung and the opinions of Dr. Oh. The RFC determination, along with the opinions of expert Dr. Lloyd, supported the conclusion that Wyman could perform her prior work as usually performed, and so, was not disabled at Step 4 of the Analysis. The decision was supported by substantial evidence.

Contrary to Wyman's contention, the ALJ considered Dr. Leung's examination and identified the findings of that examination that supported the RFC finding. The ALJ noted that Dr. Leung found on examination that Wyman's gait was within normal limits; Wyman could walk for fifty feet unassisted; she could walk, hop, heel and toe walk and squat; she had a mild S curve in her spine and decreased range of motion in her lumbar spine; and she had no muscle atrophy and no spasms. R. 15. In addition,

Dr. Oh further relied on Dr. Leung's examination in reaching his opinions. R. 266 ("Current consultative exam shows strength 5/5 throughout."). The ALJ gave great weight to Dr. Oh's opinions. R. 16. The ALJ explained his consideration of Dr. Leung's examination.

Wyman argues that the ALJ erred in rejecting the opinions of Dr. Morris. Wyman cites cases that state that the ALJ cannot reject the opinion of a treating or examining physician solely based on the opinions of a non-examining physician. Brief in Support of Plaintiff Motion for Summary Reversal (d/e 16), at 5, (citing Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003)). The circumstances in Gudgel was significantly different that this case. The examining physician in Gudgel, Dr. Baker, was a neurologist who examined the claimant three times and conducted both EMG and nerve conduction studies before reaching his diagnosis and opinions. Gudgel, 345 F.3d at 470. Dr. Morris saw Wyman once for a consultative examination. The ALJ in this case also did not rely solely on the opinions of the non-examining physician, Dr. Oh. The ALJ relied on the treatment records from Dr. Brummett that showed that the epidural shots provided significant relief from Wyman's pain. The ALJ also relied on Dr. Leung's examination in which Dr. Leung found that Wyman's gait was

within normal limits, she could walk normally, and she had no muscle atrophy or spasms.

Moreover, Dr. Morris examined Wyman on March 18, 2013, almost eighteen months after Wyman's date last insured, September 30, 2011. Dr. Morris did not state that Wyman had the limitations to which he opined before September 30, 2011. Dr. Leung examined Wyman, and Dr. Oh rendered his opinions in July 2011, while Wyman was insured - approximately two and one-half months before the date last insured. These examinations and opinions clearly reflect Wyman's condition while she was eligible for Disability Benefits. Under these conditions, the Court sees no error in the ALJ's decision to rely on opinions rendered during the relevant period before the date last insured. See Liskowitz v. Astrue, 559 F.3d 736, 742 (7th Cir. 2009) (retrospective medical opinions must be corroborated by evidence contemporaneous with the eligible period); accord Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998).

The Court agrees, however, that the ALJ inaccurately stated part of Dr. Morris' opinions. Dr. Morris did not opine that Wyman was "essentially bed ridden/lying down 5 hours out of eight waking hours." R. 15. Dr. Morris opined that Wyman could sit for two hours, walk for three hours, and stand for three hours in an eight-hour workday. This error was harmless in

light of the substantial evidence of Wyman's condition shortly before the date last insured that supported the ALJ's RFC determination.

WHEREFORE, THIS COURT RECOMMENDS that the Defendant Commissioner of Social Security's Motion for Summary Affirmance (d/e 19) should be ALLOWED, and Plaintiff Sandra Wyman's Motion for Summary Reversal (d/e 15) should be DENIED, and the decision of the Commissioner should be AFFIRMED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See Local Rule 72.2.

ENTER: March 25, 2015

*s/ Tom Schanzle-Haskins*  
UNITED STATES MAGISTRATE JUDGE